# CORBIN v. GOULD.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MICHIGAN.

No. 131. Argued November 22, 1889. — Decided February 3, 1890.

The trade-mark for tea (No. 9952) registered in the Patent Office by Ingraham, Corbin & May December 27, 1881, was for the combination of the figure of a diamond and the words " The Tycoon Tea " enclosed in it; and its registration conferred no exclusive right to the use of the word " Tycoon " considered by itself.

THIS was a suit in equity brought in the court below by Calvin R. Corbin and Horatio N. May, copartners as Corbin, May & Company, doing business in Chicago, against Walter J. Gould, Edward Telfer, David D. Cady and L. F. Thompson, copartners as W. J. Gould & Company, doing business in Detroit, for the alleged infringement of a trade-mark.

The bill filed on the 24th of September, 1885, alleged substantially as follows: That for over six years complainants had been engaged in manufacturing, preparing and shipping to the United States, and selling in the United States and elsewhere, a particular quality of tea, of which their immediate predecessors in business, Ingraham, Corbin & May, were the first and exclusive manufacturers, importers and wholesale dealers in this country; that during this period they had imported large quantities of such tea, which, by reason of its superior quality and because of the advertising they gave it, became well and favorably known, and was sold extensively in the chief cities and towns of the United States, particularly in Michigan; that said particular tea was known as " Tycoon Tea," the word " Tycoon " being properly attached to the cases and coverings in which the tea was imported; that this name " Tycoon " was given by them to their tea in 1879 in order to more clearly identify it, and had since been used as their adopted trade-mark for it; that having complied with the act of Congress in such case made and provided, and with

the regulations prescribed by the Commissioner of Patents, they procured the registration and recording of said trade-mark in the Patent Office on the 27th of December, 1881, and received from the Commissioner of Patents a certificate, [No. 9952], showing such record; that since the word " Tycoon " was first applied by them as a trade-mark, and since the date of such registration, the defendants, confederating with di ers other persons in different parts of the United States, with full knowledge of complainants' rights under and by virtue of their trade-mark, in violation thereof, without complainants' consent, and with the intent fraudulently to divert to themselves complainants' trade in such tea, put upon the market in Detroit and elsewhere large quantities of tea in packages or cases of the same size and general appearance as those used by complainants, with the word " Tycoon " stamped thereon in imitation of complainants' trade-mark — all of which was intended to deceive and mislead the public into buying defendants' tea, which is of an inferior quality, greatly to the injury of the reputation of complainants' tea; that by reason of such fraudulent acts and practices on the part of defendants, complainants had been deprived of great gains and profits in the sale of their tea, and had been damaged more than $10,000; and that defendants were still using the aforesaid facings or labels with the word " Tycoon " stamped thereon upon tea, and threaten to continue to do so, to the great injury and damage of plaintiffs. The bill prayed for an injunction to restrain the defendants and their agents from the further use of complainants' trade-mark, for an accounting, and for damages.

Upon the filing of this bill, supported by a number of affidavits corroborating its allegations, the court issued a temporary restraining order as prayed for, and the defendants thereupon filed their answer denying specifically all the material allegations of the bill. The answer further alleged that the word " Tycoon " could not have been lawfully adopted and used as a trade-mark, because it had been a word in common use in trade as a brand or name for various kinds of tea imported from Japan, for many years prior to the time when complain-

ants claim to have adopted it as a trade-mark. It further set forth that the defendants had been using the word "Tycoon" on the facings or labels of their tea in connection with the word "chop;" but it denied that these labels bore any more similarity to those of complainants than is usually the case with tea labels, and alleged that except in the word "Tycoon" there was no resemblance whatever between them. It, therefore, prayed that the bill be dismissed.

Considerable testimony was taken in the case, and the court below, on the 14th of June, 1886, rendered a decree dismissing the bill, without delivering any opinion. An appeal from that decree brought the case here.

*Mr. Lewis L. Coburn* for appellants.

I. The complainants, having acquired a valuable interest in the good will of their trade in a specially prepared, pure, uncolored and unadulterated tea, and having adopted a particular trade-mark indicating to their customers that the article which was made by their authority and sold by them possessed those superior qualities, are entitled to protection against any one who attempts to deprive them of their trade or customers by using substantially the same name, or such devices and representations as would deceive the trade. *McLean* v. *Fleming*, 96 U. S. 245.

II. Where a firm has adopted and used a trade-mark for a number of years to denote a special kind of tea and built up a large trade, the firm should be protected in the use of its trade-mark as against imitations, even though it be proven that said trade-mark had previously been used as a trade-mark for the same class of goods, provided the first user had abandoned it. *Symons* v. *Greene*, 28 Fed. Rep. 834. The plaintiff in that case adopted the word "Eureka" to denote a special kind of cement. He was held to be entitled to an injunction even though another firm had used it for several years before to designate a certain kind of cement, but had discontinued its use.

III. The prior use must be either such continued use as to

cause the word to become descriptive of kind or quality, or a continued use of the word as a trade-mark by some one having the prior right to its use. Liebig's Extract became descriptive of a kind of extract put up under a certain formula. In *Manufacturing Co.* v. *Trainer*, 101 U. S. 51, it was held that " A. C. A." designated ticking of a particular quality. Fairbanks' scales and Singer's sewing machine had by long use become descriptive of the particular kind of machines; for that reason they could not be held as trade-marks.

IV. The word " Tycoon " as used on teas prior to its adoption by the complainants as a trade-mark had no significance whatever. It was not used as a trade-mark by any one, neither had it become descriptive of any kind or quality of tea. Its prior use, therefore, was not of such a character as would deprive the complainants of the right to protection in its use as a trade-mark.

*Mr. Don M. Dickinson* and *Mr. Elliott G. Stevenson,* for appellees, cited: *Carroll* v. *Ertheiler*, 1 Fed. Rep. 688; *Collins Company* v. *Oliver Ames & Sons Corporation*, 20 Blatchford, 542; *S. C.* 18 Fed. Rep. 561; *Amoskeag M'fg Co.* v. *Garner*, 54 How. Pr. 214; *Bardou* v. *Lacroix*, 29 Annales, (Cour de Cassation, France,) 226.

MR. JUSTICE LAMAR, after stating the case as above, delivered the opinion of the court.

We are of opinion that the decree below must be affirmed. The material allegations of the bill are not sustained by the evidence, and the one which presents the entire foundation for the claim of relief is disproved by the exhibit which the complainants append to their bill. After alleging that complainants had adopted as their trade-mark the word " Tycoon," and stamped it upon packages of a particular kind of tea, manufactured and imported by themselves alone into the American market in 1879, and that the said word " Tycoon," having never before been adopted as a trade-mark, had become known to the trade as exclusively designating a particular kind of tea dealt in by the complainants, the bill states that, for the pur-

pose of obtaining protection for their exclusive right to the said word "Tycoon" as a trade-mark, they deposited it as above described in the Patent Office at Washington ; and that in 1881 the same was registered and recorded by the Commissioner of Patents of the United States, and a certificate was issued therefor, securing to the complainants protection for the said trade-mark. The exhibits A and B, appended to the bill, and other exhibits attached to Corbin's deposition, show that the trade-mark adopted by the complainants, deposited and registered in the Patent Office, is not the word "Tycoon," as stated in the bill, but a transverse diamond-shaped symbol inclosing the word "The" at the top, and "Tea" at the bottom, between which, lengthwise the diamond, is the word "Tycoon." A fac-simile is as follows :

The claim of the complainants, filed in the Patent Office for the registration of the trade-mark in question, is in these words : "Our trade-mark consists of the letters and words and arbitrary symbols 'The Tycoon Tea, I. C. & M., C., Japan Tea,' ornamental scroll border, transverse diamond shape. . . . The letters or words 'I. C. & M., C., Japan Tea,' may be omitted or they may be partly omitted and partly changed as to their position within the square without materially altering the character of our trade-mark, *the essential features of which are* the symbol of a diamond and the arbitrarily selected word 'Tycoon.'"

It is not pretended that this combination, claimed and registered as the trade-mark of complainants, has ever been used by the defendants either in the identical form, or in a form having such resemblance thereto as might be calculated to deceive. A comparison of the label of defendants with that of the complainants, as given in the exhibit to the bill, shows many striking points of difference, and but few, if any, points of

similarity, except that the word "Tycoon" is found in both. In the complainants' label, the diamond figure, the words "The Tycoon Tea," "Choicest," and "Spring Leaf" are printed in blue ink; and the other words are printed in black ink, all in different kinds of ornamental letters — the whole surrounded by an ornamental black scroll border. The defendants' label is water-marked in red and pink colors, surrounded by a heavy blue border, with black decorations. The words are printed in various styles of letters of different colors — the words "Tycoon Chop," for instance, being in large white letters with red facings, on a solid black ground; and "Japan Tea," in large black letters, some of which are plain and some ornamental. On the complainants' label the proprietorship of the tea is indicated by the letters "I., C. & M.," representing Ingraham, Corbin & May, the predecessors of the present firm; while on the defendants' label the name of their firm and their place of business appear prominently near the bottom of it.

These labels are so entirely dissimilar that it is difficult to perceive how they could be mistaken the one for the other. A mere glance is sufficient to distinguish them. There are certainly no more points of similarity between them than are to be found ordinarily between tea labels or facings; and were it not for the fact that the word "Tycoon" is found in both of them there would be no semblance of a case of infringement.

With respect to the word "Tycoon," the evidence shows beyond question that it has been used as a name or brand for Japan tea for many years. Invoices of "Tycoon Tea" were received at the custom house in San Francisco as early as May 15, 1873, as shown by a copy of the official records of that office filed in this case; and the evidence of dealers and merchants of California is all to the effect that the word was in common use as a brand for Japan tea for several years prior to that date. It is unnecessary to go into this evidence in detail; but it is conclusive as to the long use of the word prior to the alleged adoption of it as a part of the trade-mark of the complainants.

The authorities cited by complainants' counsel, to show that the prior use of a word as a trade-mark by another party who

had abandoned it is not sufficient to debar the present owner of it from protection, do not apply to this case. At the time complainants claim to have adopted the word "Tycoon" as their trade-mark, for the particular species of tea dealt in by them, it was not an abandoned trade-mark, previously used by some other person or firm to designate a particular quality of tea; but it was, and had been for many years, in general and common use as a term descriptive of a class of teas introduced into the American market — a term which all men engaged in the tea business had an equal right to use, and which belonged to no one individual either as a trade-mark or a trade label. It belonged to the public, as the common property of the trade, and, therefore, was not subject to appropriation by any one person. The following language used in *The Amoskeag Manufacturing Company* v. *Spear*, 2 Sandford, Sup. Ct. N. Y. 599, quoted with approval by this court in *Canal Company* v. *Clark*, 13 Wall. 311, 324, is applicable to the claim of the complainant in this case: "He has no right to appropriate a sign or a symbol [or a name] which, from the nature of the fact it is used to signify, others may employ with equal truth and, therefore, have an equal right to employ for the same purpose." See also *Goodyear Co.* v. *Goodyear Rubber Co.*, 128 U. S. 598; *Liggett & Myers Tobacco Co.* v. *Finzer*, 128 U. S. 182; *Stachelberg* v. *Ponce*, 128 U. S. 686; *Menendez* v. *Holt*, 128 U. S. 514.

Even conceding that the complainants may claim a trade-mark for the combination of the diamond and the words inclosed in it, as described in their application to the Patent Office, there was, upon the authorities above cited, clearly no trade-mark in the word "Tycoon" considered by itself.

The decree of the court below dismissing the bill should be, and it hereby is,

*Affirmed.*