Mr. Justice Shepard
delivered the opinion of the Court:
The relators, The Bronson Company, Adelbert E. Bronson, jr., Victoria Bronson and Thomas C. Willard, filed a petition in the Supreme Court of the District for a writ of mandamus to compel the Commissioner of Patents to register the words “Ever-Ready,” as used by them in commerce with foreign nations and the Indian tribes, as a trademark for coffee mills manufactured in Cleveland, State of Ohio; and have appealed from a judgment of dismissal.
It appears from the proceedings set out in the record that formal application was made under the law on December 7, 1898, for the registration of the foregoing trademark.
Registration was denied by the Commissioner on the ground that the words “ Ever-Ready ” are descriptive simply of the qualities or characteristics of the articles manufactured, and can not, therefore, become the subject of appropriation as a lawful trademark. The contention of relators that the duty of the Commissioner is ministerial solely, is thus stated in the petition:
“Your relators charge that the said Commissioner of Patents bad no right or authority to refuse registration of their lawful trademark; that there is no power in the said respondent, the Commissioner of Patents, under the statutes of the United States providing for the registration of trademarks, to refuse to register a trademark for any reason not specifically and precisely defined in the above-mentioned *473 statutes, and that the said Commissioner of Patents had no authority under the said statutes to refuse registration upon the ground that the said mark is descriptive, or upon the ground that the said mark is not a trademark as defined by the said Commissioner of Patents in his decision of May 18, 1899, and that in respect to these matters the function of the Commissioner of Patents is ministerial and not judicial, and that by the said rejections of the said trademark the Commissioner of Patents has exceeded the authority reposed in him by the said statutes.”
The Commissioner’s own view of his functions is clearly stated in his decision refusing registration as follows :
“The phrase ‘owners of trademarks’ manifestly limits the right of registration to such person or persons, natural or artificial, as possess the legal title to that for which registration is sought, and it further limits the right of registration to that which is a trademark. It is therefore incumbent upon the various tribunals of the office having in charge the registration of trademarks when an application for registration is filed to decide at the outset two questions: (1) Is applicant the owner, and (2) is that which he seeks to register a trademark ? ”
The court below, in dismissing the petition, was governed by the decision of this court in Seymour v. South Carolina, 2 App. D. C. 240.
In that case, upon a review of section 3 of the act of 1881, it was said: “We think it plain that the duties of the Commissioner are something more than ministerial, and that they differ widely from the duties of a mere register of deeds, or receiver of papers for file, with which an attempt has been made to institute a comparison. . . . The Commissioner is required to decide ‘the presumptive lawfulness of claim to the alleged trademark.’ This, in connection with the preceding portion of the third section aforesaid, can mean nothing less than that in all cases he shall inquire, first, if the applicant has actually used the trademark in *474 lawful commerce with foreign nations or with the Indian tribes, and then, if he has the right to use it at all. If he finds that the ‘ alleged trademark ’ is the name of the applicant, or any other name which can not be lawfully converted into a trademark at common law, or that it is identical with the trademark of another, registered or unregistered, or is a deceptive imitation of another, or that it is not the property of the applicant, he can not admit it to registration, though he may be satisfied that the applicant has used it in regular commerce wdth foreign nations or the Indian tribes.”
No point was made in that case in respect of.the lawfulness of the use of the particular word as the trademark sought,to be registered; consequently, whilst the right of the Commissioner to pass upon such a question, is embraced within the language quoted from the opinion therein, it was not necessarily involved, nor was it separately discussed and distinctly considered.
For these reasons, and because the question is one of importance and public interest, it will be reconsidered.
The contention now is, that when an application for the registration of a trademark shall have been made, but four questions are to be inquired of and determined by the Commissioner. These are: 1. Has the trademark been used in lawful commerce with foreign nations or the Indian tribes ? 2. Is it within the provision of a treaty, convention or declaration with a foreign power ? 3. Is it merely the name of the applicant ? 4. Is it identical with a registered or known trademark owned by another and appropriate to the same class of merchandise, or which so nearly resembles some other person’s lawful trademark as to be likely to cause confusion or mistake in the mind of the public, or to deceive purchasers ? Under these heads, and these alone, it is said, is the Commissioner vested by the statute with the authority to “decide the presumptive lawfulness of claim to the alleged trademark.” In other *475 words, if no proper objection can be found to the claim of registration under the foregoing heads, the Commissioner is bound to register the trademark, without regard to any other objections that might be made to its use.
The argument is, that the intention of Congress, in this regard is made plain by the omission from section 3 of the act of 1881, of the following clause with which section 4939 begins: “The Commissioner of Patents shall not receive and record any proposed trademark, which is not and can not become a lawful trademark.”
It is true that this clause was not copied in section 3 of the act under consideration, but the question remains: Do the substituted words remove this lawfulness of appropriation and use as a prerequisite condition of registration ?
'Section 4939 was apart of the old act of July 8, 1870, which had been declared unconstitutional by the Supreme Court in the Trademark Cases, 100 U. S. 82; and the new act was the result of an attempt to conform to the views expressed therein. Congress was legislating anew upon an exceedingly restricted view of its authority, in respect of trademarks, as compared with that assumed when the original act had been passed, and was attempting to give them such qualified standing and protection as might be included within its grant of power to regulate commerce.
It is to be presumed also that Congress was, at the same time, equally familiar with the long and well established rules of law applicable to the acquisition of property in the use of words and symbols as trademarks.
At that time, as has since been said by the Supreme Court of the United States: “The general principles of law applicable to trademarks, and the conditions under which a party may establish an exclusive right to the use of a name or symbol, are well settled by the decisions of this court in the following cases: Canal Co. v. Clark, 13 Wall. 311; McLean v. Fleming, 96 U. S. 245; Manufacturing Co. v. Troiner, 101 U. S. 51; Goodyear Co. v. Goodyear Rubber Co., 128 U. S. 596 ; *476 Corbin v. Gould, 133 U. S. 308; Lawrence Manufacturing Co. v. Tennessee Manufacturing Co., 136 U. S. 537; Brown Chemical Co. v. Meyer, 139 U. S. 540. These cases established the following general propositions: (1) That to acquire the right to the exclusive use of a name, device, or symbol, as a trademark, it must appear that it was adopted for the purpose of identifying the origin or ownership of the article to which it is attached, or that such trademark must point distinctively, either by itself or by association, to the origin, manufacture, or ownership of the article on which it is stamped. It must be designed, as its primary object and purpose, to indicate the owner or producer of the commodity, and to distinguish it from like articles manufactured by others. [2) That if the device, mark, or symbol was adopted or placed upon the article for the purpose of identifying its class, grade, style, or quality, or for any purpose other than a reference to or indication of its ownership, it can not be sustained as a valid trademark. (3) That the exclusive right to the use of the mark or device claimed as a trademark is founded on priority of appropriation; that is to say, the claimant of the trademark must have been the first to use or employ the same on like articles of production. (4) Such trademark can not consist of words in common use as designating locality, section, or region of country.” Columbia Mill Co. v. Alcorn, 150 U. S. 460, 463. In accordance with the principles stated, it was held in that case that one could not acquire a right to the exclusive use of “Columbia” as a trademark.
The Commissioner, in office at the time of the passage of the existing law, had no doubt that the lawful right to convert a word or symbol into a trademark was intended to remain a prerequisite condition of registration, and therefore resumed the practice, in that respect, that had prevailed as long as the old law had been considered in force and effect. And that practice has not, since that time, been departed from; until recently, indeed, its soundness seems e ver to have been questioned.
*477 Aside from the persuasiveness of this early and long continued practical construction of the executive department charged with the execution of the law, and looking solely to the language of its several sections, we are unable to discover an intention on the part of Congress to throw open the door of registration to every name and symbol that caprice might adopt regardless of the old and well-settled rules of law applicable thereto that have been stated above. Section 3 expressly declares that “ no alleged trademark shall be registered unless the same appear to be lawfully used as such by the applicant.”
To maintain their position, counsel for the appellant are forced to contend that the foregoing words, “lawfully used,” have reference to the nature and character of the trade in which the manufacture shall have been carried on under the proposed trademark, and have no relation whatever to the lawfulness of the right to appropriate the particular words or symbol to use as such.
Grammatically, the qualifying words, “ as such,” following “lawfully used,” would seem to indicate that lawful use — that is to say, use which could, under established rules of law, result in the lawful exclusive appropriation of the alleged trademark — was meant, instead of use in lawful commerce, as contended. Bearing in mind the settled rules of law in respect of the right to appropriate certain classes of words and symbols to exclusive use as trademarks, the words “ lawfully used,” under the foregoing construction, answer both a reasonable and important purpose. On the other hand, by referring and limiting them to the nature or character of the commerce that shall have been engaged in, no necessary or important purpose would be subserved. It was entirely unnecessary to say that the commerce which which had been engaged in must have been lawful commerce. It would seem to follow, as a matter of course, that when commerce with foreign n ations and the Indian tribes was mentioned, the meaning was lawful commerce and not illicit trade.
*478 This view is confirmed by the language of the preceding section 2. This provides that the application “must, in order to create any right whatever in favor of the party filing it, be accompanied by a written declaration . . . to the effect that such party has at the time a right to the use of the trademark sought to be registered . . . that such trademark is used in commerce with foreign nations or Indian tribes.” ...
In our judgment, then, “the owners of trademarks,” who, by the first section, are permitted to obtain registration of the same, are those that, in the manner and under the conditions prescribed, shall have used such words and symbols only as at common law are susceptible of exclusive appropriation as trademarks; and this is one of the essential elements of “the presumptive lawfulness of claim to the alleged trademark” with the decision of which the Commissioner is charged. The performance of this duty involves discretion; in respect of it the function of the Commissioner is. judicial.
Moreover, if the contention of the appellants were admitted, that the Commissioner is bound to register anything claimed as a trademark, provided the claimant shall have used it in lawful commerce and it be not identical with the registered or known trademark of another, or a deceptive resemblance thereof, it would follow that Congress must have intended also, by this limited registration act, to create lawful trademarks in words and symbols not capable of appropriation as such at common law. For example, section 7 makes registration prima facie evidence of ownership; and then every person who shall reproduce, counterfeit, copy, or color-ably imitate the trademark so registered is made liable to an action on the case for damages, or may be restrained by injunction. Jurisdiction for both purposes is given to the courts of the United States without regard to the citizenship of the parties. Suppose, then, that some one should offer for registration the word “Columbia,” which, as we have *479 seen, can not be appropriated as a lawful trademark, still, under the contention of appellants, registration could not be denied for that reason alone.. Having obtained registration, he becomes the prima facie owner of the word as a trademark, and a subsequent applicant would be denied. “If the latter applicant persist in using the word upon articles of similar manufacture, he becomes subject to the actions given the registered owner. Without admitting, but conceding for the purposes of the argument only, that Congress would have the power to create a trademark, as well as to admit one to registration, otherwise lawfully acquired and used in commerce with foreign nations under treaties, and with the Indian tribes, the foregoing conclusion would be the logical result of the appellant’s contention. The statement of the conclusion is a sufficient demonstration of the unsoundness of the premises from which it is deduced. It is impossible to conceive that Congress, in the adoption of the seventh section, contemplated the existence or the exercise of any such power, or, on the other hand, the opportunity for the harassing and fruitless litigation that would follow opening the door of registration and the acquisition of a prima facie right of ownership of words and symbols incapable of exclusive appropriation as lawful trademarks.
At this stage of our opinion, our attention has been called to a. decision of the Supreme Court of the United States rendered a few days ago. Elgin National Watch Co. v. Illinois Watch Case Co. (unreported). The complainant, having obtained registration of the word “Elgin” as a trademark for its manufactures of watches and watch cases, filed a bill, as authorized by section 7 of the act of March 3, 1881, to enjoin the defendant from affixing the word to its manufactures of similar articles. Both corporations were created under the laws of Illinois. The Circuit Court of Appeals having ordered the bill dismissed for want of jurisdiction, that decree was affirmed. Whilst the particular question *480 as here presented was not discussed in that case, the conclusion we have before announced is clearly within the reasoning of the opinion. After reciting section 7 aforesaid, the Chief Justice, who delivered the opinion of the court, said :
“Thus it is seen that under the act registration is prima facie evidence of ownership; that the certificate is evidence in any suit or action in which the registered trademark is brought in controversy; that the act practically enables treaty stipulations to be carried out and affords the basis for judicial redress for infringement in foreign countries, where such redress can not ordinarily be had without registration, as well as in the courts of the United States, when jurisdiction would not otherwise exist. For it is the assertion of rights derived under the act which gives cognizance to courts of the United States when the controversy is between citizens of the same State, though the benefit of the act can not be availed of if the alleged trademark is not susceptible of exclusive ownership as such, and not, therefore, of registration.”
And again, after reaffirming the doctrine of Columbia Mill Co. v. Alcorn, 150 U. S. 460, and other cases cited, the opinion concludes as follows: “We are of opinion that the general rule applied, and that this geographical name could not be employed as a trademark and its exclusive use vested in the appellant, and that it was not properly entitled to be registered as such.”
Upon a careful re-examination of the act of March 3, 1881, in connection with the above case and the additional argument for the appellants founded thereon, we are entirely satisfied with the scope of the powers and duties of the Commissioner as declared in Seymour v. South Carolina, 2 App. D. C. 240, 249, as well as with the limitation therein given to the power of the courts to control the exercise of his discretion in the execution and performance of those powers and duties. It follows that the judgment dismissing the petition must be affirmed, with costs. Affirmed.