EDWARD PERLBERG

*v.*

SAMUEL C. SMITH, trading as S. C. Smith & Co.

[Decided December 4th, 1905.]

1. No rights are acquired by the filing of a label in the United States patent office, as against any person doing business in the same state, since congress has no power to legislate with respect to trade marks, so far as concerns commerce within the boundaries of a state.

2. Where the owner of a shoe store marked all of the shoes he sold "Eagle Shoes," though they were procured from various sources, so that the name did not indicate any particular brand or make of shoes, he is not entitled to protection in the use of the name.

3. One who procured from a manufacturer shoes marked "Eagle Shoes" could not be enjoined from selling them by one who had previously built up a business in the sale of shoes, and who marked all his shoes "Eagle Shoes," where the name had formerly been used by various manufacturers, and where the person sought to be enjoined did not attempt in any way to deceive the public into the belief that they were buying the shoes offered for sale by the other person.

Heard upon bill, answer, replication and proofs in open court.

This is a bill filed by Edward Perlberg against Samuel C. Smith to restrain the latter from selling shoes under the name of "Eagle Shoes."

The bill sets out that the complainant is a shoe dealer in Jersey City, with a place of business at No. 2 Newark avenue, in said city, and that the defendant is a shoe dealer, with a place of business at No. 90 Newark avenue, in said city; that the complainant some seven years ago adopted a label to be placed upon shoes sold by him, and upon the 12th of October, 1901, filed in the office of the department of the interior, in the patent office, a copy of said label, and received from said office letters-patent therefor; that he had used said trade mark for a long time prior to obtaining said letters-patent, and is still using

the same; that the public have placed great confidence in said trade mark, and that, by reason of the confidence of the public in the said style and make of the shoes sold by him and marked in accordance with the said letters-patent, he has built up a lucrative and prosperous business, and that the style, make, comfort and durability of said shoes have been recognized by the public; that he is the sole possessor and owner of said trade mark, and is the sole and exclusive agent for the sale of the said Eagle shoes, "and that Samuel Smith represents to the public that he has for sale shoes known as Eagle shoes," which shoes complainant charges are inferior to the shoes sold by him.

The complainant further charges that Smith is using the same labels as complainant, and that, by reason of the acts of the defendant, complainant is irreparably damaged and should be protected by the injunction of this court.

The answer of the defendant need not be further referred to than to state that it denies all of the material allegations of the complainant and puts him to proof with respect to his right to relief.

*Mr. J. Merritt Lane,* for the complainant.

*Mr. Charles C. Kelly* and *Mr. Charles J. Roe,* for the defendant.

GARRISON, V. C.

The proofs, so far as they are pertinent to the decision, show that Edward Perlberg, in the year 1898, opened a shoe store at No. 2 Newark avenue, in Jersey City. He had not been in the shoe business prior to that time. His name did not appear upon any sign, and the sign that he adopted had upon it the words "The Eagle Shoe Store." Upon the windows of his store he had painted the representation of an eagle with outstretched wings, bearing in its claw a shoe. This picture, with the addition of a streamer proceeding from the beak of the eagle, upon which were the words "Eagle Shoes," constituted the label adopted by the complainant and subsequently filed by him in the patent office.

The proofs are indefinite as to whether he ever placed this complete label upon any of the goods sold by him, but if he did, its use was early discontinued, and no part of his present claim rests upon the use by him of this label.

He advertised very extensively in the local newspapers and by handbills, always referring to his store as "The Eagle Shoe Store," and always calling attention to the shoes that he sold under the name of "Eagle Shoes."

There is abundant proof that shoe stores in many other places had adopted the name "Eagle Shoe Store" long prior to the time that the same was adopted by the complainant for his store. The proofs are also perfectly clear that the word "eagle," in connection with shoes, has been at various times and in various places, by manufacturers and local dealers, used to designate shoes sold by them, and that it was so used long prior to the time that Perlberg went into the shoe business. In some instances the words "Eagle Shoes" were placed upon the shoe when made by the manufacturer, and in others they were placed thereon by the local dealer himself. Those that were marked by the manufacturer were sold either directly to the retailers or were sold to jobbers and by them sold to retailers, or were sold at auction to whomsoever would buy.

The defendant, Smith, for at least eighteen years has been in the shoe business in Jersey City, his store now being at No. 90 Newark avenue, in said city. This is near where Perlberg opened his store. Just prior to the filing of the bill in this cause it is proven that Smith placed placards upon the outside of his store announcing a sale of "Eagle Shoes," with the prices stated. The shoes thus advertised were made by Taylor, a manufacturer, who had marked them "Eagle Shoes," and were sold to Smith through a jobber named Young. They had upon the sole a representation of an eagle and the name "Eagle Shoes," together with the price. They also had upon the back strap the name "Eagle Shoes," with the price.

The complainant alleges that Smith's reason for advertising the sale of "Eagle Shoes" was to revenge himself upon Perlberg because of a real or fancied grievance that he had against Perlberg with respect to the agency for the sale of shoes named

"Queen Quality Shoes." I believe Smith displayed the placards announcing the sale of the Eagle shoes he had to catch some of the custom attracted by Perlberg's advertising. Smith testifies, and it is not disputed, that for more than eleven years, on and off, he had sold different shoes from different sources of manufacture which, in one way or another, were designated as "Eagle Shoes"—that is to say, either on the carton in which the shoes were contained, or on the back strap of the shoes, or on the sole thereof, they were marked or designated as "Eagle Shoes."

The bill was evidently framed upon the theory that the complainant had a technical trade mark or label, and that this right was infringed by the defendant.

The trade mark or label claimed in the bill by the complainant was that which he filed in the patent office, and which has been heretofore described. The undisputed proofs show that the complainant, if he ever placed this trade mark upon shoes sold by him, long since abandoned the use of the same, and contented himself with placing the words "Eagle Shoes" upon the back strap of each of the shoes sold by him.

There was not the slightest attempt on the part of the complainant to prove that he was the "sole and exclusive agent for the sale of said 'Eagle Shoes,' " as he pleaded in his bill that he was, or that, as a fact, there was any proprietary shoe called "Eagle Shoe" sold by him as agent.

There is no pretence in the proofs of showing that the defendant in any way simulated the label claimed by the complainant. There is ample proof that other dealers in shoes, prior to the adoption by the complainant of the aforesaid label, had adopted similar labels for shoes, using almost the same design and the same words.

The complainant obtained no rights which he may enforce in this suit by virtue of filing his label in the patent office. It has been settled by the supreme court of the United States that there is no power in the congress to legislate with respect to trade marks, so far, at least, as concerns commerce within the boundaries of a state. *United States* v. *Steffens, 100 U. S. 82; 25 L. Ed. 550.*

41

The complainant, at the argument, very properly abandoned the issue based upon the claim of any exclusive right, and did not claim that he had a technical trade mark which had been infringed. He shifted his ground to a charge of unfair competition. There is a very grave question whether the complainant, by abandoning so much, has not abandoned all. Whatever his rights might be as the owner of a technical trade mark, or as the user of a mark adopted by him which another would not, to his damage, be permitted to simulate, there is a very serious question as to whether he may proceed against another who is not charged with simulating the design or mark of the complainant, but is merely charged with using words which appeared in the complainant's trade mark, but which were equally open to use by the complainant and the defendant. *Corbin* v. *Gould, 133 U. S. 308; 33 L. Ed. 611.*

But I do not desire to rest my determination upon this sole point, and I therefore pass to the consideration of the charge of unfair competition.

Stripped of extraneous matter, the complainant's contention urged upon the court was that for seven years he had called all the shoes sold in his store "Eagle Shoes," and had marked upon the back straps of each of such shoes the words "Eagle Shoes;" that he had spent large sums of money in advertising the shoes sold by him, referring to such shoes in his advertisements as "Eagle Shoes;" that his place of business was close to that of the defendant, and that the defendant displayed placards announcing the sale of "Eagle Shoes," and that this was unfair competition as against the complainant.

Care must be taken in these cases not to extend the meaning of the word "unfair" to cover that which may be unethical but is not illegal. It may be unethical for one trader to take advantage of the advertising of his neighbor, but his so doing would in many instances be entirely legal. If one dealer advertises extensively and at great expense the sale of a staple article, or of any article which he has not the exclusive right to vend, his neighbor may undoubtedly endeavor to cause the customers attracted to the neighborhood by the advertising to purchase the

same or a similar article at his store instead of at the store of the advertiser.

What conduct on the part of a defendant will be held to constitute unfair competition is the subject-matter of discussion in cases too numerous for useful citation, but the principle applied in each case is extremely simple. As Lord-Chancellor Halsbury said in the House of Lords, in the case of *Reddaway* v. *Banham, 1896, A. C. 199* (at *p. 204*) ; *25 Eng. Rul. Cas.* (at *p. 197*) : "For myself I believe the principle of law may be very plainly stated, and that is that nobody has any right to represent his goods as the goods of somebody else."

If the complainant has a technical trade mark, the deciding of the case is greatly simplified, because the use by another of this trade mark will, of itself, be sufficient for the determination that the one simulating it is defrauding the complainant. If, however, the complainant has not a technical trade mark, the difficulty in determining his right to relief is not with respect to the principle of law to be applied, but to the question of fact involved.

While courts often say that the first user of a word, phrase or design, such as is the proper subject of a trade mark, has a property right thereto, I incline to the view that this is an inaccurate use of terms. As is pointed out by Lord Herschell, in the case just cited (at *p. 209*) (*25 Eng. Rul. Cas. 202*), although some of the rights of property attach to such a use, the same principles are applied and the same rights enforced where the user has no exclusive right and no property right in the mark or name. The whole doctrine rests upon the prevention of fraud. The advantage of not misusing the word "property," in connection with the right of the user of a trade mark or trade name, is that the proper conception of the basis of the right, administered in favor of the complainant, reconciles the decisions respecting the subject-matter.

The principle is universal in these cases that one may not palm off his goods as the goods of another, and this irrespective of whether that other has a technical trade mark, is using his own name, or is using words to which he has no exclusive right

whatever, providing he is using the name or mark to denote the origin or ownership of the named or marked goods.

There is, of course, a distinction to be observed with respect to wholesalers and retailers.

· The exact point of inquiry in the case in hand is whether the complainant so used the words "Eagle Shoes" that he is entitled to protection, and whether the defendant Smith will be prevented by injunction from selling from his store shoes named "Eagle Shoes."

The proofs are full and clear that the complainant marked all of the shoes that he sold "Eagle Shoes." He obtained these shoes from manufacturers, from jobbers and at auction sales. His shoes, therefore, were the product of many different manufactories. The stamp "Eagle Shoes" upon the shoes sold by Perlberg meant nothing saving the fact that they had been previously purchased by Perlberg and were marked at the time of their sale by him "Eagle Shoes." It did not in any way indicate the origin or source of production, or even, as the proofs show, any element of selection on the part of Perlberg.

· It did not denote kind, brand or make. Perlberg's own testimony shows that he purchased shoes at auction at cheap prices and resold them as "Eagle Shoes;" that they were sold cheap at auction because they had been unsalable in the regular course of trade. ·

A fundamental principle is that the kind of trade mark or trade name that will be protected is only such as implies origin or ownership. *Lawrence Manufacturing Co.* v. *Tennessee Manufacturing Co., 138 U. S. 537; 34 L. Ed. 997,* with note; *Columbia Mill Co.* v. *Alcorn, 150 U. S. 460; 37 L. Ed. 1144.*

I do not mean to imply that a trade mark will only be protected if placed upon an article manufactured by the user of the. mark, because this is not the law. One who causes goods to be manufactured for him, or who selects goods manufactured by others, and places his trade mark thereon, is entitled to protection with respect thereto, but I firmly hold the conviction that in each instance where the user is protected he must show that there is *a particular thing* upon which he has placed the mark

so that the appearance of the mark connotes that *thing*. If this is not so, then the whole basis of the law of trade marks is without solid foundation upon which to rest. If the appearance of the mark upon the thing is not a guaranty that it is the thing, marked to differentiate it and distinguish it from other similar things sold by other dealers, then the trade mark is deceptive and worthless. If, without regard to the source of manufacture or to any distinction of kind, brand or make, this trade mark of a retailer is placed indiscriminately upon every article of any given species, it can serve no other purpose than to show that the article is sold by that person, and if a man is to be protected at all in this respect he must lay a basis for such protection by adopting an arbitrary, fanciful designation, of which he is the first user, and so obtain a technical trade mark.

I do not decide, because it is not necessary, whether there could be such a thing as a technical trade mark which did not denote kind, brand or make, but merely did denote the fact that it was sold by a certain retailer.

If Perlberg, by adopting the words "Eagle Shoes" to denote the shoes sold by him, sought to convey the impression to the public that he was retailing a particular kind, brand or make of shoes under the name of "Eagle Shoe," then he was conveying a false impression, and upon familiar principles will not be protected with respect thereto. This undoubtedly was his intention, and in his bill in this suit he pleads that "he was the sole and exclusive agent for the sale of the said Eagle shoes." If such was not his intention, then I am at a loss to conceive of any principle upon which he may prevent another from making use of the term "Eagle Shoes." He has, as has been before pointed out, no exclusive right to the words "Eagle Shoes." He cannot successfully put forward any claim to prevent anyone else from using those words. The utmost right which he may claim would be to prevent another from using those words in such a way as to palm off the goods of that other as the goods of Perlberg. This he may do if he shows the court that he has used those words in connection with goods in such a way as to identify the name and the goods; that is, that he used the name to

denote a particular kind, brand or make of shoes. This he has not done, because the proofs demonstrate that he applied the name indifferently and indiscriminately to all kinds of shoes, from every source, irrespective of their origin, kind, brand or make, and that the term was meaningless save to the extent that it meant the shoes sold in his store.

Of course, if it were charged that the defendant so befogged the public by simulating the signs of the complainant's store, or changing the appearance of the exterior of his store to make it resemble the complainant's store, that people did not know into which store they were going, there would be some ground for action.

In the case of Van Horn v. Coogan, 52 N. J. Eq. (7 Dick.) 380 (Vice-Chancellor Van Fleet, 1894); affirmed, Id. 588, there will be found an instance of this kind. There the defendant placed out in front of his store a number, which was not the number of his store, but was the number of the complainant's store. The case just referred to contains, as nearly as does any other cited by the complainant, the most favorable application of the principles of law which the complainant invokes. In that case a dealer in stoves in Newark purchased from a manufacturer a particular kind of stove and caused it to be named "Portland." He was the only dealer in Newark to whom the manufacturer thereof would sell this kind of stove. The defendant placed the number of the complainant's store outside the door of his own store and changed the name of a stove that he had been selling theretofore under another name to the name "Portland," and sought to sell that stove to the public under that name. He was restrained upon the ground that the proofs were adequate that he was endeavoring to palm off his article as the article of the complainant.

If we apply the principle of that case to the case in hand it will at once be seen how variant is the result. The defendant in the case at bar did not in any way endeavor to deceive the public with respect to the stores of himself and the complainant. He did not change the name upon any of the shoes in his store. The shoes which Smith was selling as "Eagle Shoes" were so marked by the manufacturer, without any procurement by

Smith, and were sold by the manufacturer or his agent to anyone in the open market. They had upon the sole a picture of an eagle and the words "Eagle Shoes," with the price, and they also had, upon the back strap, the words "Eagle Shoes," with the price. Any dealer in Jersey City or elsewhere throughout the entire world could have purchased these shoes from the jobber or, I presume, directly from the manufacturer.

No one, certainly, in buying these shoes from Smith, could have been deceived into the belief that he was buying them from Perlberg. Could the purchaser be deceived into the belief that he was buying from Smith the same thing which Perlberg was selling under the same name? The answer to this is no, because Perlberg was not selling any particular kind, brand or make of shoes under that name. He was selling every kind, brand or make under that name. So that we come back to the principle previously stated, that unless the name adopted is used to indicate origin or source of manufacture, or in some way to designate that the particular thing upon which it is placed is of a certain kind, brand or make, the one using it is in no position to restrain others from using the same name upon similar articles.

I do not think it necessary to indulge in numerous citations for so familiar a principle. If a complainant is shown to be deceiving the public he cannot receive protection. *Manhattan Medicine Co.* v. *Wood, 108 U. S. 218; 27 L. Ed. 706; Stirling Silk Manufacturing Co.* v. *Sterling Silk Co., 59 N. J. Eq. (14 Dick.) 394 (Vice-Chancellor Emery, 1900); Koehler* v. *Sanders, 122 N. Y. 65; 9 L. R. A. 576; Leather Cloth Co.* v. *American Leather Cloth Co., 11 H. L. C. 523; 11 Eng. Rep. 1435; Prince Manufacturing Co.* v. *Prince's Metallic Paint Co., 135 N. Y. 24; 27 L. Ed. 942,* and note, in which many cases are cited; *S. C., 17 L. R. A. 129,* and note.

The basis of the complainant's claim in this case must be that he had so used the term in controversy as to build up a trade in the thing to which the name was applied. Since he utterly fails to show that there was any particular thing to which this name was applied he is without redress.

I will advise a decree dismissing the bill, with costs.