SPIEGEL et al. v. ZUCKERMAN et al.

(Circuit Court, S. D. New York. January 24, 1910.)

1. TRADE-MARKS AND TRADE-NAMES (§ 93*) — PRIORITY OF USE — BURDEN OF PROOF.

Where two or three makers are using the same word as a mark or brand on the same class of goods at the same time, and one asserts the right to it as a trade-mark, and seeks to enjoin the others from using it, he has the burden of proof to show that he was in fact the first to use it.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 104½ ; Dec. Dig. § 93.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 33*)—ASSIGNMENT—VALIDITY.

A trade-mark cannot be assigned except as an incident to the transfer of the business and good will in connection with which it was acquired.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 37 ; Dec. Dig. § 33.*

Assignment of right to use trade-name. see notes to R. W. Roger's Co. v. Wm. Rogers Mfg. Co., 7 C. C. A. 579; Kathreiner's Malzkaffee Fabriken Mit Beschraenkter Haftung v. Pastor Kneipp Medicine Co., 27 C. C. A. 360.]

3. TRADE-MARKS AND TRADE-NAMES (§ 21*)—PERSONS ENTITLED—PRIORITY OF USE.

Complainants held not to have an exclusive right to use the word "Princess" as a trade-mark for shirt-waists on evidence that, at the time their predecessors, who assigned the right to them, began its use, it was and had been for some years used by different manufacturers throughout the country, either by way of a trade-mark or as a brand.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 21.*]

In Equity. Suit by Hyman Spiegel and Conrad Prehs, partners, against Louis Zuckerman and others, partners under the name of the Princess Shirt Waist Manufacturing Company, to restrain the defendants from continuing the alleged infringement of the alleged trade-mark "Princess," which the complainants claim they and their predecessors first appropriated and used as such. Decree for defendants.

James E. Bennett (Charles G. Hensley, of counsel), for complainants.

Bernhard Gainzburg (Samuel I. Frankenstein, of counsel), for defendants.

RAY, District Judge. The complainant firm, doing business as Spiegel & Prehs, claims to be the owner of the trade-mark "Princess" as used in connection with ladies' shirt waists, and that defendants Louis Zuckerman, Morris Kantrowitz, and Nathan Benowitz, or firm, infringe same, in that they are doing business under the firm name and style of "The Princess Shirt Waist Manufacturing Company," and thereby, in effect, representing themselves as the makers of the Princess shirt waist for ladies. The complainant firm contends that in 1899 the name "Princess," as applied to shirt waists, was first chosen and appropriated as a trade-mark by their predecessors in title.

The bill of complaint alleges that heretofore and on or about January 1, 1901, Harry Kottler and Lipawsky were, as copartners, doing

a shirt waist business under the firm name of H. Kottler & Co., and so continued until February 8, 1906; that the shirt waists so made and sold, "had plainly marked thereon an arbitrary word, to wit, 'Princess'; that said word was placed upon said shirt waists as a trademark and to indicate the ownership and origin thereof, and that during all the time hereinbefore mentioned the shirt waists so marked and sold were well known throughout the United States by the said word 'Princess,' and were ordered by purchasers under and by said word 'Princess'; that by reason of the said sale of shirt waists bearing the said trade-mark the said firm of H. Kottler & Co., who were the first to adopt and use the said word as a trade-mark for shirt waists, became the owners of the exclusive right to the use of the said trademark on ladies' and girls' shirt waists, and continued to own the exclusive right to said trade-mark until the said firm of H. Kottler & Co. assigned their rights unto your orators as pleaded herein." By fair inference this is an allegation that this word "Princess" was adopted as a trade-mark in or about January, 1901. The bill then alleges an assignment of said trade-mark by H. Kottler & Co. to the complainants by assignment made in February, 1905, with the good will of the business, and that Kottler & Co. dissolved partnership and the said firm ceased to exist. It also alleges that the complainant firm has since continued to use said word "Princess" as its trademark, and that April 8, 1907, they duly registered the same under the act of February 20, 1905, accompanied by a verified declaration of Hyman Spiegel, etc. The statement so filed on such registration and so verified by said Spiegel states "the trade-mark has been continuously used in our business, and in the business of our predecessors, H. Kottler & Co., from whom we derived title, since about the first day of January, 1901." June 25, 1903, said H. Kottler filed an application with the Treasury Department of the United States for the registration of said word "Princess" as a trade-mark, made in behalf of said firm of H. Kottler & Co., and his affidavit, sworn to June 25, 1903, says "that, since the month of January, 1903, his said firm has adopted and used for its trade-mark the following inscription, 'The Princess,' printed and underscored by a heavy line having the words 'Trade-Mark' impressed on said line as fully appears by an exact likeness hereto annexed," and that the firm was established in December, 1900. In his evidence Kottler says "between 1900 and 1903 the firm of H. Kottler & Co. was wound up. Nathan Lipawsky succeeded to the firm of H. Kottler & Co. in December, 1902. In December we started. Our contract was for two years. At the expiration of the contract Lipawsky was supposed to continue the business, but he gave me notes in payment of his share, and he could not meet his obligations, and a few weeks afterwards our partnership was discontinued. We made a new contract and became partners again," etc. He says Lipawsky was in business for himself for a few weeks before the new partnership of same name was formed. He also says Kottler Bros. preceded H. Kottler & Co. and that he (the witness) was practically Kottler Bros. He also says there were three brothers composing the firm of Kottler Bros. and that Kottler Bros. used the word "Princess"

on boxes containing shirt waists, made or caused to be made and sold by them, and on some of the waists.

The written assignment of this alleged trade-mark bears date or was acknowledged February 8, 1906, and runs from H. Kottler & Co. by Harry Kottler to the firm of Spiegel & Prehs and purports to bargain, sell, and convey "All our right, interest and property right we now have in and unto a certain trade-mark, or trade-name, known as and consisting of the inscription 'The Princess,' and which trade-mark as aforesaid has been filed, or sent to the collectors of the customs at certain ports." No reference is made to any prior oral assignment or agreement to assign, or to any business or to the good will of any business. It is claimed, however, that there was a prior oral assignment of the trade-mark and business and good will altogether.

### Defenses and Prior Use.

The defendant insists that the evidence shows the complainants and their predecessors were not the first to adopt and use the word "Princess" as a trade-mark, and that, in the absence of fraud or purpose to imitate the dress or style of complainants' goods or packages, or even knowledge of complainants' use of the word, it had and has the right to adopt the firm name or business name "The Princess Shirt Waist Manufacturing Company." On the 10th day of August, 1905, the defendants entered into a copartnership in the business of manufacturing and selling ladies' shirt waists under the above name, and under that name they have since carried on that business. They had no knowledge that the complainants had or purported to have a trade-mark "Princess," or that they were making or selling a shirt waist known as "Princess" or "The Princess." They do not attach, and never have attached, that name, or the firm name, to any of their goods. The defendants label their boxes containing their goods "Ladies' Shirt Waists." In shipping goods it is necessary, in order to comply with the requirements of the carriers, to put on the boxes containing them the names of the consignor and consignee, and hence they have a label for shipping purposes only reading, "Don't Crush. To ——. From Princess Shirt Waist Manufacturing Company, 38-44 West 21 Street, New York." This label is not used in sending goods by messenger or when doing up goods for a purchaser who takes them away himself. They do not do a retail business. There is no evidence that the defendant firm is known as the manufacturer of any particular brand of shirt waists or of the "Princess" shirt waist. They have never received an order for "Princess," shirt waists, nor have they ever billed any as such. The defendants do not and never have used the word "Princess" to designate their goods, or as an advertising medium in any way, directly or indirectly. There is an utter absence of any element of unfair competition in trade. It is apparent, of course, that persons acquainted with the shirt waists made by the complainant firm and desiring same, and ignorant of the name of the firm making them, might assume they were made by "The Princess Shirt Waist Manufacturing Company," and send an order to that company. A person so ignorant of the true origin of the shirt waists marked or labeled "The Princess" might send correspondence to the

defendant company assuming that "The Princess Shirt Waist Manufacturing Company" was the maker and seller of such shirt waists. The defendants have produced evidence tending strongly to show that at the time of the adoption by complainants' firm of the word "Princess" as a trade-mark it was in actual use by others on the same class of goods, viz., ladies' shirt waists, to designate origin and ownership or maker—that is, as a common-law trade-mark—and had been so used prior to the use thereof by complainants' firm.

I do not think there is any substantial or trustworthy evidence in this case that the complainants or their predecessors in title adopted this word as a trade-mark or to designate the origin of their shirt waists prior to 1901 or 1902. There is no satisfactory reason given for their adoption and use of that particular word. The defendants prove to my satisfaction that in 1900 one Edward Bleicher and another filed a certificate in the clerk's office of the county of New York under the name of "The Princess Shirt Waist Manufacturing Company." That firm went out of business in 1901. In October, 1900, there was a corporation doing business at 355 Wabash Avenue, Chicago, Ill., under the name "Princess Waist Company," incorporated under the laws of the state of Illinois. It was then engaged exclusively in the manufacture of silk waists. It sold its waists from Maine to California. The corporation used the word "Princess" as a trade-mark to designate its waists and that name was on a woven label attached to each and every waist made or sold by it. They were sold as "Princess Waists." The billheads used by the corporation showed they were "Princess Waists," and the stationery used by it showed that it dealt in "Princess Waists." Some of the labels were produced, defendants' exhibit label, "Princess," and were on cloth with the words "The Princess" in red letters. The label "Princess Waists" was also pasted on the boxes containing such waists.

December 1, 1902, Leon Swawite, who was a stockholder in and vice president of Princess Waist Company, went into business for himself, and up to that time certainly the business mentioned was continued as described. The Princess Waist Company, under that name came into existence March 7, 1900, the name being changed by law from Teasdale Waist & Suit Company. February 9, 1904, the "Princess Waist & Suit Company" was incorporated under the laws of the state of Illinois. Its business was the same as that of the Princess Waist Company. January 8, 1906, Swawite and L. K. Fisher bought out this last-named corporation and all its assets were turned over to him including the labels "The Princess" before mentioned, and they have continued the use of such labels and name as a trade-mark. In January, 1899, Riegel, Wilson & Finley, a copartnership, commenced business in Philadelphia, Pa., in manufacturing and selling ladies' shirt waists. In November of the same year Mr. Riegel withdrew, and the other members continued the business as Wilson, Finley & Co. until July, 1901, when the Wilson Manufacturing Co. succeeded to the business. In 1899, Riegel, Wilson & Finley adopted a trade-mark for the purpose of designating the mark and ownership of their shirt waists, viz., "Princess." They adopted it as a brand, the

name of a shirt waist, in January, 1899, and that firm as then constituted used it until November, 1899, and advertised that it made "Princess" shirt waists and also used a label "Princess" on each waist, sewed on the neck band, consisting of an engraved cloth label, the words being, "The Princess Brand," in black ink on a white label. They sold these waists in several states of the Union and on the boxes containing them put a label "The Princess Brand." They sold them as such and received orders for "Princess." "Princess Brand" was stamped on the billheads. They neither made nor sold any other brand. Their successors, Wilson, Finley & Co., continued to use the same name in the same way on their shirt waists and in their business for two years. Riegel sold out to them his interest in the first firm. In 1901 and thereafter said Wilson Manufacturing Co. used the same name for the same purpose in the same way. The other partners of the preceding firm knew it was being so used, and as Mr. Wilson was the only one of the old firm who went into the new he considered he had the right to use the old name "Princess," and the new firm did. Only a month intervened between the dissolution of Wilson, Finley & Co. and the organization of Wilson Manufacturing Co. This continued until 1904, when Wilson withdrew. During all of this time the name "Princess" and "The Princess" or "Princess Brand" was used on the shirt waists, on the boxes containing them, on billheads, etc. The shirt waists were sold and purchased under that name. "Princess Brand" was on their signs visible to all passers in the streets. Mr. Hamburger and then Hamburger & Son succeeded to this business and it was continued until 1905. They continued to use the trade-mark or name "The Princess Brand" on all the shirt waists made and sold by them and on bills, boxes, etc.

Gussie Eisen, called by complainants in rebuttal and sworn in September, 1909, claims that she came to this country from Austria, Galicia, about 10 years ago and worked for Kottler Bros., who, she says, had a shirt waist and a rag business. She cannot remember the year or time of year, but says they used the word "Princess" on boxes for shirt waists—may have on the waists too—but cannot remember. She says she was 14 or 15 years of age when she came to this country, "Something like that," and cannot remember the name of the steamer she came over to this country on. She cannot tell what year she came to this country. After coming here she attended evening school some and learned to read and write English some. It appears that her attention was called to the use of this label 10 years ago by Mr. Kottler going to her and asking, not if she remembered their using a label and if so what, but if she "remember the place using the Princess label?" Assuming that in 1899 Kottler Bros. were using the word "Princess" on shirt waists, it is clear that others were also using it on shirt waists to indicate origin and ownership and there is no satisfactory evidence, not a fair preponderance of evidence, that Kottler Bros. were the first to adopt it. In view of Kottler's interest, the allegation of the complaint that H. Kottler & Co. were the first to adopt and use the word as a trade-mark, the affidavits and verified declaration referred to, and the very unsatisfactory testimony of the Eisen girl, I am unable

to find that the complainant firm and its predecessors in title appropriated and used this word prior to 1901 or 1902, and am compelled to find that others had appropriated and adopted and were using it as their trade-mark to distinguish their shirt waists and their make and ownership prior to that time. Its use as such had not been abandoned by others when these complainants filed their application for registration of the word as a trade-mark in April, 1907. In August, 1905, the defendants formed their copartnership and adopted their firm name. The complainants at that time had no better right to the use of the word "Princess" than did defendants, and, assuming that the registration of the word "Princess" by complainants is valid and effective from the date the application was filed, it cannot affect the right of defendants to continue the use of their company or copartnership name. "Words or devices, or even a name in certain cases, may be adopted as a trade-mark, which is not the original invention of the party who appropriates the same to that use. Phrases, or even words or letters in common use, may be adopted for the purpose, if at the time of their adoption they were not employed by another to designate the same or similar articles of production or sale." Amoskeag Mfg. Co. v. Trainer, 101 U. S. 51–56, 25 L. Ed. 993. This case states that "at the time of their adoption" they must not be employed by another. This language would permit A. to take up and adopt as a trade-mark and appropriate to himself a word which others had used as a trade-mark for the same kind of goods, but had abandoned. In Del. & Hud. Canal Co. v. Clark, 13 Wall. 311, 20 L. Ed. 581, the court said:

"The office of a trade-mark is to point out distinctively the origin or ownership of the article to which it is affixed; or, in other words, to give notice who was the producer. This may, in many cases, be done by a name, a mark, or a device well known, but not previously applied to the same article."

This may be read to indicate that a word used by A. as a trade-mark for certain goods and then abandoned may not be subsequently adopted by another on the same class of goods. I do not see why A. may not adopt a word, sign, or symbol as a trade-mark to designate the origin and ownership of his goods even if it had been used by B. at a prior time for the same purpose as to the same kind of goods, provided B. has absolutely abandoned it, and it had not gone into general use. But there are reasons to the contrary. Bulte v. Igleheart Bros., 137 Fed. 492, 70 C. C. A. 76; Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144; Corbin v. Gould, 133 U. S. 308, 10 Sup. Ct. 312, 33 L. Ed. 611; Pratt Mfg. Co. v. Astral R. Co. (C. C.) 27 Fed. 492. But if this is so it does not aid the complainants here. It is certain that others were using the word "Princess" as a trade-mark or a trade-name to designate origin and ownership and name of manufacturers of ladies shirt waists at the time complainants and their predecessors in title adopted it. In fact, taking all the evidence together, I think the word "Princess," and the words "The Princess" and "Princess Brand," as applied to ladies' shirt waists were quite generally in use by more than one firm of makers and sellers as early as 1899, and that it was "picked up" from the trade by the com-

plainants as a good name regardless of whether or not it was in use by others. It is, of course, true that priority of adoption and use, however short the time, if shown, concludes all others, but a mere intention to adopt as a trade-mark to indicate origin, etc., is not enough, and where the evidence is that two or three makers and sellers were using the same word on the same kind or class of goods, such as shirt waists, at the same time, and one of them asserts in court that he was the first to adopt and use it as a trade-mark and seeks to enjoin others from using it, the burden is on him to show that he was in fact the first to so adopt and use. There is no presumption in his favor.

On this evidence it is just as probable that the mind of the general public associated the name "Princess" or the words "The Princess" or "Princess Brand" with shirt waists made in Chicago as with those made in New York. "The trade-mark must therefore be distinctive in its original signification pointing to the origin of the article, or it must have become such by association." D. & H. Canal Co. v. Clark, 13 Wall. 311, 20 L. Ed. 581; Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144. "It is sufficient that by association with such articles in trade it has acquired with the public an understood reference to such origin," etc. Dennison Mfg. Co. v. Thomas Mfg. Co. (C. C.) 94 Fed. 651; Stachelberg v. Ponce (C. C.) 23 Fed. 430. It is somewhat significant that the written assignment of this alleged trade-mark running from H. Kottler & Co. to Spiegel & Prehs was not executed until February 8, 1906, when the agreement to assign was made in 1902 or 1903. Harry Kottler also testifies that H. Kottler & Co. did not dissolve until the latter part of June, 1906. The firm of Spiegel & Prehs was formed in August, 1887, under that name, but it had existed since 1901 or 1902. Spiegel says that after H. Kottler & Co. dissolved and was succeeded by Lipawsky, he (Lipawsky) continued to make shirt waists and put the label "Princess" on the boxes and sell them to him. This was in 1906 or 1907. The occasion of the oral agreement between H. Kottler & Co. and Spiegel that Spiegel should have the exclusive use of the word "Princess" was that confusion had arisen whether or not Kottler & Co. or Spiegel was the maker of the "Princess" shirt waists. It is clear that both were using it to designate their make, and that both continued to use it. In point of fact, that word as used by the two firms did not point to origin or ownership, but to the name of the waist simply, and so far as the general public knew or could know the waists bearing that name were made by either Lipawsky (or Lipaw) or by Spiegel's Company up to 1907. And when the oral agreement as to the use of the word was made in 1901 or 1902 no business was transferred. I do not think a trade-mark can be transferred in any such way. "A trade-mark is the sign of the good will or reputation of a business, and it is not an abstract property right apart from its use in that business." It is assignable, of course, but only in connection with the business. Morgan v. Rogers (C. C.) 19 Fed. 596; Bulte v. Igleheart Bros., 137 Fed. 492, 498, 499, 70 C. C. A. 76; M. P. Co. v. D. C. Mfg. Co., 113 Fed. 468, 474, 51 C. C. A. 302; Kidd v. Johnson, 100 U. S. 617, 620, 25 L. Ed. 769; Hoxie v. Chaney, 143 Mass. 592, 10 N. E. 713, 58 Am. Rep. 149,

Frank v. Sleeper, 150 Mass. 583, 23 N. E. 213; Celluloid Mfg. Co. v. Cellonite M. Co. (C. C.) 32 Fed. 94. If the entire business and property and good will is sold the trade-mark will go with it. If the owner of the trade-mark, applied to a certain class of goods of his make, simply sells his place of business and stock of goods on hand and goes to another place to engage in the manufacture and sale of the same goods, he retains the trade-mark and may use it on his goods made at the new location. But this is somewhat aside from the question I am deciding, as I hold that H. Kottler & Co. had no valid trade-mark in the word "Princess" to assign.

There will be a decree dismissing the bill, with costs.