IKE GERSHONOWITZ and PHILIP GERSHONOWITZ, complainants,

*v.*

NATHAN NEIDER and MAX FELDMAN, defendants.

[Submitted February 6th, 1924. Decided February 8th, 1924.]

1. Where a vendee had no knowledge of the vendor's inability to convey land at the time an agreement to convey was made he may at his election repudiate the agreement upon ascertaining the lack of or defect in the title. But should he not then repudiate the agreement he is bound to perform if the title can be made by the time of the decree.

2. Evidence examined, and *held* that the agreement of sale was not in fact repudiated, and the defects in title being now cured, the agreement must be performed.

On bill, &c.

*Mr. Isaac Gross,* for the complainants.

*Mr. Harry B. Dembe (Mr. Thomas J. Brogan,* of counsel), for the defendants.

BENTLEY, V. C.

This is a bill by a vendor for the specific performance of a contract to convey land.

On November 23d, 1922, the parties entered into a contract for the sale of property in the city of Newark for the sum of $44,000, to be effected on February 1st, 1923. Time was not of the essence of the contract. On January 26th the defendants made objection to the title in a letter which set out a large number of encumbrances and defects. Every encumbrance and defect in the title has been cleared up and was cured not later than May 11th, 1923, whereof defendants were notified, and whereupon, on the 14th, the complainants served written notice upon the defendants that they would be ready to convey, on May 24th, at four P. M., at the place agreed upon in the contract, and said: "We hereby make said time of the essence of said contract, and demand that you then attend to perform the same on your part."

There was no such attendance, and thereupon, after some further correspondence, this bill was filed on July 6th.

The defense undertaken to be made out is, that the contract was repudiated in February, at or about the time for passing title, and that, consequently, the dealings of the parties were at an end. I find, as facts, that all defects in or questions concerning the title have been cured or eliminated. In fact, there seemed to be a tacit agreement on the hearing to that effect, leaving only the question I have just stated.

Every witness produced is vitally interested in the result of this case. On both sides the solicitors of record have testified, not merely as to formal matters, but as to the merits of the question to be decided, and, on the part of the com-

plainant, the solicitor who actually tried the case has given evidence on the disputed facts on the merits. This, as he knows, if the matter had to be decided upon the oral proofs, would place the court in an exceedingly unpleasant position, and is a practice condemned in this state. *Garrett* v. *Garrett, 86 N. J. Eq. 293.* It is only fair to say, however, that complainants' counsel was probably surprised at the line of defense adopted at the final hearing, although he did not object to the same, and that he had every reason to believe, as he indicated in his opening, that he would simply have to meet legal questions as to the state of the title at this time. The other witnesses were, respectively, the agent who was interested in the contract being performed, who testified to a very damaging admission by the defendant Neider, and that defendant who took the stand for the single purpose of denying the same. Fortunately, I feel that the documentary evidence is a safe guide, and sufficient for determining the single issue presented.

Following the objections made to the title in the letter referred to above, the defendants' solicitors, on February 14th, notified the complainants' solicitors that they hesitated to guarantee the title, and suggested that if a title company policy of insurance could be procured they would *recommend* that the defendants complete the contract, and then say: "In other words, if Gershonowitz Brothers are willing to pay the fee of the title company to guarantee both of these searches to us, we will then close it."

Thereupon the complainants took up the matter of title insurance with some company and appear to have been able to secure the same. At the same time, and necessarily running over a considerable period, steps were taken to clear the record of all judgments, in at least one case requiring proceedings under the statute, with the advertisement to the parties in interest and the other steps, consuming considerable time. The next letter that passed between the parties was one of May 8th to the defendants' solicitors, from which it might be drawn that the defendants had changed their mind about a policy of insurance and preferred the guar-

antee of their attorneys. It also notified the defendants of the correcting of all defects and irregularities, and called upon them to fix any time they pleased for the closing of the contract. To this letter there was no reply, and the defendants' solicitors have no recollection of receiving the same; but it is impossible for me to escape the belief that the letter was, in fact, sent to them. Thereupon, on May 14th, the demand mentioned above was made upon the defendants that they perform their contract on the 24th. To that the defendants replied, under date of May 17th, denying the implications contained in the complainants' letter, and saying: "At the time our search was completed we informed you that because of the irregularities and existing judgments we could not advise them to take title."

Of course, there was no written information to that effect, and, for the reasons I shall subsequently state, I feel compelled to find that there was no such repudiation at all. It is also significant that the letter closes with this paragraph:

"The writer expects to be in Jersey City some time next week, and I will call upon you personally in regard to the matter."

Several letters passed between the respective solicitors, culminating in the usual threat of a suit and invitation to commence the same.

This course of correspondence and the conduct of the complainants, through their solicitors, makes its clear to me that there was no effort or intent until May, when the title had been cleared, to terminate the contract. It is incredible that in an important contract, involving the not inconsiderable sum of $44,000—no matter how friendly counsel may have been to one another—an experienced lawyer would have left the election to discontinue liability, upon mere word of mouth. Defendants' counsel did not neglect to put in writing their letter of January 26th, in which they tabulated those matters that they desired corrected, nor did they neglect to make a written memorandum of the dissatisfaction of their clients in May, when they definitely made up their minds not to accept title. Furthermore, it is un-

believable that complainants' counsel would have gone to the trouble and expense of securing affidavits, copies of *remittiturs,* and proceedings to cancel records if they had known that the defendants had put an end to their relations with the complainants, to say nothing of procuring, or undertaking to procure, an expensive policy of title insurance. I think that this is a case where either the defendants tired of their bargain or became impatient at the delay, and, being business men, desired to employ their fortunes and energies in another direction. It is also significant that in their answer, filed July 26th, 1923, the defendants represent themselves as having been ready, willing and able to carry out their contract, but say not one word about their attempted defense, namely, that they had terminated the contract.

There is no question of fraud or bad faith, and I think the cases comes under the rule as stated by *Pom.* § *2230:*

"If, however, the vendee had no knowledge of the vendor's inability to convey at the time of the agreement, he may, at his election, repudiate the agreement upon ascertaining the lack of, or defect in, the title. But, should he not then repudiate the agreement, he is bound to perform if the title can be made by the time of the decree."

The pertinent part of this rule was acted upon by the court of errors and appeals in *Van Riper* v. *Wickersham,* 77 N. J. Eq. 232. In that case Vice-Chancellor Leaming allowed a period of time for the complainant to perfect his title after the hearing and before the signing of the decree.

I will advise a decree of specific performance and dismiss the defendants' counter-claim to be reimbursed for their deposit under the contract and their search fee.