This suit presents the ordinary vendor's bill to compel a vendee to abide by his contract, except that it expressly places upon the complainant the duty of delivering releases from all mechanics and others who might have a claim against the land by reason of the Mechanics' Lien act. 3 Comp. Stat. p. 3290. The contract provided for the passing of title on August 3d 1926, at which time there appeared of record a lien claim filed by one Wolf for $1,700. The complainant sought and obtained a postponement of one week. On the latter day not only was the lien of Wolf still in existence but, in addition, a new lien claim had been filed by one Jackson in the sum of $7,500. Thereupon, there was served upon the defendant, on the 11th day of August, a notice that unless the complainant completed its contract on or before the 25th day of August, 1926, between the hours of ten o'clock in the forenoon and four o'clock in the afternoon at the office of the attorneys for the defendant, the vendee would consider the contract at an end and demand the return of the deposit made.
In the eyes of equity, the day named in such a contract as the one sought to be enforced is a mere formality unless made binding by the terms of the contract or the surrounding circumstances. In the original contract punctuality was not essential, and, the liens above mentioned having since been discharged, it only becomes necessary to determine whether or not the notice of August 11th imparted that characteristic to the transaction. Vice-Chancellor Backes declared that it did, in Orange Society
v. Konski, 94 N.J. Eq. 632; affirmed, 95 N.J. Eq. 254. I so decided in Gershonowitz v. Neider, 95 N.J. Eq. 580.
"Where time is not of the essence, the time in which the party in default may have a further right to receive performance may be limited by the party not in default giving reasonable notice that performance must be made by a certain day. If a reasonable time after receipt of the notice is thus given the party in default equity will not enforce specific performance in his behalf after the day named. 5 Pom. Eq. Jur. (2d ed.) 2237." *Page 566 
It would be intolerable if the purchaser was obliged to await final judgment in a collateral suit or action between the vendor and a third party.
It will have been observed that professor Pomeroy's statement of the rule, and also the above opinion filed by Vice-Chancellor Backes, require that the notice must be for a reasonable period of time and that, of course, would be determined upon a consideration of what it would be necessary for the party in default to do so as to make it possible for him to comply and any other surrounding circumstances. In the above-cited case the court observed not only that the time given the vendor to complete a complicated set of achievements was so short as to amount to "snap action" but, in addition, that it was not given in good faith, but for the purpose of evading his contract. In the case at bar, two full weeks were allowed the complainant to clear its title (although only one week was requested on the day originally designated for completing the contract), and that clearance would have required only the elimination of two mechanics' liens, the smaller of which would unquestionably have been cleared, and would have been cleared, on August 25th, simultaneously with the delivery of the deed. An effort was made by the complainant to meet the claim of Jackson for $7,500, which it recognized as an otherwise insuperable obstacle to the consummation of the agreement, by the delivery of a certified check in the exact amount of the lien claim, and agreed to an amendment to be made in the purchase-money mortgage to be taken back by it, to secure the vendee against any further loss to befall the defendant by reason of taking title. This form of security the vendee declined to accept and thereupon considered and treated the transaction as at an end.
As counsel for the defendant points out, two statutory methods were in existence at the time fixed by the defendant for the completion of the contract. One is contained in 3 Comp. Stat. p.3314 § 32, and the other in 1 Cum. Supp. Comp. Stat. p. 1853
§§ 126-6[a], 6[b] and 6[c]. The first provides for the deposit of sufficient moneys to meet any possible judgment that may be rendered based upon such liens, together *Page 567 
with a provision for costs and interest. The second provides the convenient method of a bond in twice the amount of the lien claim. Neither one of these methods was attempted to meet the very real and existing hazards, so far as was then known, to the defendant, and he had a legal right which this court cannot take from him to contemplate the possibility that he might some day have to litigate with Jackson or find his title unmarketable if he chose to sell.
It is difficult to see how more than fourteen days could have been required to clear the title of Jackson's claim (all difficulty with the other having been eliminated) and, therefore, I cannot say that it was unreasonably brief. The complainant solemnly agreed that it would secure the defendant against the demand of any of the mechanics employed upon the construction of the building on the land, and this it not only failed to do but made no effort to explain. When it is considered that the complainant either by negligence or design failed to file its contract so as to secure the benefit of the Mechanics' Lien act, it is difficult to perceive how it can successfully complain that the defendant, who had been alert enough to insist upon releases, refused to involve himself in the peril of lawsuits and the possible loss of money. Doutney v. Lambie, 78 N.J. Eq. 277;Kohlrepp v. Ram, 79 Id. 386. While this court has a limited power to adjudicate disputed questions of law that may or may not affect a title, it is a very serious error for the court to overstep its authority, as Vice-Chancellor Garrison pointed out in the latter of the two cases cited. If it is a dangerous thing to force a title upon a party which is subject to a debatable question of law, consider how much more dangerous it would be to compel a man to accept a title where there was an apparent valid claim against the very thing that he conveyed.
It may be said that it is now apparent that the demand of Jackson was not a valid one and would have subjected the defendant to no peril at all. The answer to that is, that the vendee exercised his undoubted legal right on August 25th to reject the title because of the state of the record as it then existed with respect to the land to be conveyed. There is *Page 568 
little doubt in my mind that the defendant tired of his bargain between the time of execution of the contract and the time for the consummation thereof. This may not represent the best of manners among speculators in real estate, but courts of justice have never assumed jurisdiction over questions of ethics, as Vice-Chancellor Garrison said in Perlberg v. Smith, 70 N.J. Eq. 638.
The defendant had the right to ask "Is it so nominated in the bond?" and if the answer was in the negative he was justified in declaring the transaction at an end. This court is powerless to render "rude justice" where a defendant stands entrenched behind his legal rights, and this has been so frequently declared that to cite authorities would be a work of supererogation.
The complainant relies upon a wealth of authorities dealing with the power of the court to decree specific performance where a good title can be conveyed upon the date of the decree. I cannot refrain from commenting, parenthetically, upon the fact that nearly all of these cases cited on behalf of the complainant are cited from one of the unofficial reports, although many, if not all of them, are reported officially except some very recent ones. This practice is very reprehensible and causes considerable inconvenience. There can be no objection to citing from any of the generally used unofficial reports, but in every instance this should be accompanied by the citation from the official report. However, an examination of them discloses without exception that time was not of the essence in a single case.
So that there may be no misunderstanding, it should be understood that the decision of the case at bar rests squarely upon the effect of the notice of August 11th. Briefly restated, the defendant was authorized to make time of the essence. He did so. Upon the appointed day he was not proffered a title free from doubt. It was his right to raise the objection of the possibility of the hazards, worries, vexations and inconvenience of a lawsuit, and, having done so, it constitutes a legal defense to the bill. If he was unwilling to speculate, this court, with its broad powers, should also refuse.
 The bill should be dismissed. *Page 569